The next matter, number 24-112 and number 24-1260, Jose Rene Alvarez Mendoza v. Merrick B. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin. Good morning. May it please the court, my name is Jacob Tuttle Newman and I represent the petitioner. With the court's permission, I'd like to reserve two minutes for rebuttal. Two minutes, you may have that. I want to talk first about the second-in-time petition for review that was filed in this case. There are two petitions for review before the court. The second-in-time one addresses Mr. Alvarez's motion to reopen his immigration proceedings in light of his pending meritorious U visa application. On this issue, the board's decision fell well short of what this court requires. The court's recent precedent in Granados Benitez adopting the BIA's San Jose analysis lays out what needs to happen and the BIA didn't do that. You argue this case is like Benitez, but in Benitez, the petitioner promptly filed a U visa, right? And also had been placed on a wait list. That's different from what we have here, isn't it? I agree with Your Honor, as a factual matter, those things are different, although I would So why don't those facts distinguish Benitez for us? Absolutely. So I think, first of all, while Mr. Benitez potentially promptly filed a U visa petition, he still filed the petition while his motion was pending, excuse me, while his appeal before the board was pending, and then moved to reopen after there was a final agency decision, which does put this on all fours in that instance. The second thing I'd say is that Sanchez-Sosa doesn't mention the requirement of a letter. The question under the second prong of the Sanchez-Sosa test is whether there's a prima facie approvable U visa application pending, which is uncontested that, again, Mr. Alvarez, similar to Mr. Granados Benitez, has a prima facie approvable U visa petition application pending. So, again, I don't think the letter ultimately factors into the underlying analysis that Sanchez-Sosa requires. I think it is probative evidence that Mr. Granados Benitez was in line. I would also say that Mr. Alvarez's petition has been pending for a while. So what do you think is required at the second step of Sanchez-Sosa? So the problem here is that this person had crimes that might make him inadmissible, ineligible for a U visa. And so what do you think the, and that's not a decision of the BIA or the IJ, that's a decision of a different agency. So what do you think is supposed to happen? What is the IJ supposed to say about that? So that's correct, Your Honor. The IJ ultimately didn't end up having a chance to apply the underlying Sanchez-Sosa factors because the BIA rejected. I'm sorry, the BIA said it's too speculative and that's the extent of the analysis. Correct. So you have the thrust, just to make sure I understand it, the crux of your argument is that's not good enough. To just say it's speculative what's going to happen on our inadmissibility question, the BIA says it's speculative, that's not good enough. So what is the BIA supposed to say? So I think the BIA is supposed to follow the analysis laid out in Sanchez-Sosa. And under the second prong of Sanchez-Sosa, there are factors that the BIA considers in assessing the prima facie approvability. And those factors include whether Mr. Alvarez-Mendoza was subjected to severe mental abuse as a result and then was a cooperating witness for the government. And then one of the factors that Sanchez-Sosa discusses is whether the waiver of a U visa, or excuse me, whether the waiver of inadmissibility is likely. That's not ultimately what the BIA did here. What the BIA did here was it said that the grant of a U visa was wholly speculative in light of the necessity of a waiver. It didn't assess the likelihood that a waiver would be granted. It didn't assess the other factors. So to narrow in, you think what had to have happened is they needed to discuss the specific crimes of which this individual had been convicted and make some predictive assessment of whether those crimes would be sufficiently serious that the agency was likely to deny the waiver? However, I think that what Sanchez-Sosa says is when a waiver is required, the agency has to assess whether a waiver is likely to be granted. And as I read the BIA's decision, the BIA is using the fact that a waiver is required to suggest that the U visa itself is wholly speculative. It's not even assessing the likelihood that a waiver would be granted. Now, I think it's relevant here that Mr. Alvarez actually the crimes of which he pled guilty relate to people who are supportive of his underlying applications and are kind of incidents at a time when he was suffering from the effects. And you're telling me those things because those are things the BIA should have written about in making a predictive assessment of whether he was likely to get a waiver? I think that those are things that go to the underlying Sanchez-Sosa analysis related to waiver. I think one thing the BIA could have done and what this court ordered in Granados Benitez is reopened and remanded to the IJ to assess the Sanchez-Sosa factors. I think that that is what the Sanchez-Sosa's analysis requires. And I think if the BIA was not inclined to engage in the necessary fact finding, Mr. Alvarez-Mendoza met the test for under Granados Benitez for moving to reopen and the BIA could have said we're sending this back to the IJ to assess the Sanchez-Sosa factors. But you're not going so far as to say that we need to establish or consider whether he's got a colorable argument for waiver of inadmissibility. Just in this case, the BIA just didn't do anything. So we don't really need to provide any guidance, right? That's correct, Your Honor. I think that the BIA didn't assess that at all. The BIA used that to duck the actual test that was supposed to apply. So you would say we should remand this to the BIA to apply Sanchez-Sosa? What I would say is that you should, as in Granados Benitez, remand to the BIA to reopen and have the IJ apply Sanchez-Sosa. I guess that's what I don't understand. Isn't the Sanchez-Sosa factors what should be considered to determine whether to reopen? So I think that if the BIA believes it has an adequate factual record to assess all of the Sanchez-Sosa factors, that's something that could be done. In Granados Benitez, this court concluded based on the BIA's decision there and its failure to apply the factors. It strikes me that in our relationship to the agency, we should be doing sort of as little as possible to directly tell them what to do. So it seems to me at the top level, the least thing, if you're right, that we can do is say, you didn't apply Sanchez-Sosa, I don't know if you can do it or the IJ can do it, but you didn't decide the reopening question correctly, so here you go, do what you think is right. Is that not the way to think about it? I agree that that's absolutely something this court could do, and that's relief that Mr. Alvarez would seek. I think in Granados Benitez, the court concluded that the BIA had not even kind of done enough work to warrant this court remanding to the BIA and instead asked it to reopen. That's right. When I read the record, there's a lot of stuff about his prior crimes. I know there are several decisions in the trail of this case about them, right? So there is a record that you could think about the likelihood that he would be deemed, that he would get the waiver. That's correct, Your Honor. That's something that the BIA could absolutely consider. I want to touch on the other claims, at least the proposed social group. I think that the BIA there similarly – I see my time's running out. Why don't you finish your thought? Similarly, the BIA failed to kind of meet the relatively low threshold that you were discussing in the prior case with the particular social group. This court addressed a very similar circumstance in the Ferreira case earlier this year where the BIA completely misstated the proposed social group. That's an error of law and warrants remand. You'll have two minutes for rebuttal. Thank you. At this time, would counsel for the respondent please introduce himself on the record to begin? May it please the Court, Colin Tucker for the Attorney General. Both this Court and the Supreme Court have recognized that a petitioner has to clear a very high bar in order to justify disturbing the Board's denial of reopening. This is due to both the applicable and highly deferential standard of review, review for abuse of discretion, and the fact that motions to reopen are generally disfavored. The denial of reopening here is based on consideration of factors deemed relevant by agency precedent and for that reason is not manifestly – Let's jump to the CentraSOSA question. What supports your position that the BIA did apply CentraSOSA? I'm sorry, Your Honor. Yes, what is – What supports the position, your position, that the BIA applied CentraSOSA here? Well, Your Honor, the CentraSOSA dictates that relevant factors include the agency's position, prima facie approvability of the relief sought, and reasons for the continuance or other procedural factors. In this decision, albeit it is a brief one, I will not argue that, but we have a citation to the matter of CentraSOSA. We have a discussion of prima facie approvability in the form of the reference to the relief being purely speculative. So can you just direct me to the language that you're relying on? I know there's – I see the site, but the language in the decision that you say – Sure, Your Honor. Yeah. In terms of the prima facie approvability, Your Honor, the language that I'm referring to is where they say the potential grant of relief remains wholly speculative, particularly because he will require a waiver of any disability. And that's what they say is the error right there, what you just said at the end there, that that's the error. Correct. That just to say it's speculative whether he's going to get it is not what CentraSOSA talks about because it actually talks about a predictive evaluation of whether the person is likely to get it. And what's missing from that BIA decision that we're reviewing is that predictive analysis of whether he's likely to get that waiver. That's very true, Your Honor. But what's missing from CentraSOSA is the additional layer of the onion, if you will, that we have here, which is a motion to reopen. CentraSOSA discusses what the immigration judge should do in the course of evaluating a first instance motion for a continuance. And have we said that motions to reopen are governed by the same CentraSOSA factors? You have, Your Honor, but you've not made allowances for the second step of CentraSOSA, which would be consideration of the disability waiver. And as you noted, that's a very fact-specific, a very fact-centric consideration. In the context of deciding a motion to reopen, the board can't make factual findings along the lines of how serious was the crime, which crimes are we talking about, how long ago did they occur. Those are factual findings that are fine for an immigration judge to make in the course of deciding a continuance motion, but that the board can't make in the course of deciding a motion to reopen. And so you're saying that even though, yes, CentraSOSA applies, so although I think there is a big record here, because there are a lot of opinions about, so in this particular case, I don't know if that's a problem, but you're saying in the mind-run of cases, that would be a problem for the BIA to make that reopening decision. And the suggestion I heard is, well, if you need limited fact-finding, the BIA has an apparatus through IJs where they can do that. That's the government's position, Your Honor. First, I would note that the regulation that bars the board from engaging in fact-finding in the course of deciding cases makes no reference to the size of the record or how much evidence is available to the board. Second, I would point out that really the government's position here is that prima facie approvability in this context is a straightforward question. If you apply for a U visa, you have to be admissible. Here he is not admissible, therefore, in deciding a motion to reopen, he is not prima facie approvable for the relief he seeks. But he would be eligible if he gets a waiver? If he gets a waiver, yes. If USCIS, at its discretion, granted one, he would be. And your point a second ago was that's true, and so it talks about actually analyzing whether USCIS would do that. But what you just told me is, but in a motion to reopen, you should think of it differently because the BIA doesn't have the fact-finding capacity to do more than say it's speculative. Correct. Did I understand that right? Correct, Your Honor. And the answer I heard from your friends over there was, well, what you could do is tell the BIA to go send it to an IJ who can take whatever evidence is necessary, and you could figure it out that way. What's wrong with that procedure? I think the Board could do that, Your Honor, but the fact that it doesn't does not mean that its decision is an abuse of discretion. And do you have cases, or where do we get the idea that Sanchez-Sosa in the motion to reopen is not as robust as it is in the motion to continue context? Well, I think there are numerous cases, Your Honor, that make the distinction between a motion for a continuance and a motion to reopen. They're governed by different standards. They're both discretionary. But when we said Sanchez-Sosa applies to motions to reopen, which I think you said we did. Yes, you did, Your Honor, in a case I would point out that did not involve the need for a waiver of inadmissibility. And we said nothing about waiver of inadmissibility? I do not believe you did, Your Honor. And we never have. That Sanchez-Sosa is more limited in the motion to reopen context than the motion to continue context. I don't believe that there is a case which specifically states that, Your Honor. May I ask you a question, counsel? If it were clear on a record that the waiver of inadmissibility should be granted, it's all one-sided and it's crystal clear, but we had a BIA decision exactly like this one that said it's speculative. For one thing, he has to get the waiver, but it's clear from the record that the waiver would be granted. Would you still say that we have nothing to say about that? I think that I would, Your Honor, because admittedly I'm hedging on your question a bit here, but I think that because the question of these waivers is less to the discretion of USCIS, it would not be appropriate for the court to reach a conclusion about whether it's clear from the record that a waiver is warranted. Yeah, but you'd say we can't even, we can't. It's not that we would reach that conclusion. You're saying we can't even send it back to the BIA. That would be the government's position, Your Honor. Yes. Okay. Regarding the denial of withholding of removal, the government's position first and foremost is that the primary argument, the petitioners raised on that issue was not properly exhausted. The appeal brief that was filed at the board, excuse me, I'll back up for a moment, the argument is essentially that the agency wrongly conflated social distinction with ocular visibility in the course of rejecting the proposed social group. Nowhere in the appeal brief was that argument made. The board had no notice of an argument that the standard was wrongly conflated, and for that reason it had no chance to pass on the specific argument that's raised now. If you look to the appeal brief in the case, nowhere does the phrase ocular visibility occur. There were objections raised with respect to the social distinction finding, but again nothing that would put the board on notice of an argument that it was wrongly conflated with ocular visibility. I'm prepared to conclude if the court has no further questions. Thank you. Thank you. Thank you, counsel. At this time would counsel for the petitioner please reintroduce himself on the record. He has a two-minute rebuttal. Do you want to quickly touch on that exhaustion argument? Yes, Your Honor, I'm happy to. My name is Jacob Tuttle Newman. Oh, I'm sorry. I'm a petitioner. There are two points I would make in response to the exhaustion argument. The first is that the exhaustion argument has no application to errors made by the BIA. Both this court and the Supreme Court have held that you can't have an exhaustion requirement when the decision appealed from is the decision that introduced the error. That is absolutely the case in terms of the BIA citing the incorrect PSG in the first place in contravention. Just a minute. That's different than ocular visibility. You're saying they talked about people who cooperated in any kind of case and you're limiting it to criminal cases? Is that what it is? I don't have the exact language in front of me right now. But roughly? But there was a meaningful difference in terms of how the PSG was stated. I think the government's brief acknowledges effectively that stating the wrong PSG is an error. And they say it's harmless because it says it's harmless. What's your response to that? That kind of Pereira is fairly directly on point, that it's not harmless simply because they stated another PSG, the correct one somewhere else, that in fact the place where they stated the incorrect one here was when they were doing the core analysis as it related to this Salvadoran law that is intended to protect victims who are potential testifying witnesses against violent criminal elements and that it is not harmless because it is in the core of the analysis. The second thing I'd say as to the ocular visibility point is that that was also before the agency that one of the issues centrally raised in the briefing was the way that the IJ had conflated the particularity prong and the social distinction prong and what the BIA did in fact was to incorporate that error by basically taking the particularity prong and social distinction prong, calling them social distinction, but continuing to blend them. And so if I may conclude. So the BIA once again introduced and compounded the error that the IJ had made, which was directly before it in the brief. And before you sit down, can you just tell me, he says that you can't map on Sanchez-Sosa, which is a motion to reopen case to a motion to continue case onto a motion to reopen case. And so the best the board could do here is say it's speculative. What is your response to that? I think my first response would be that if the board feels that it doesn't have the record before it to make the legal conclusions it needs, it can, as your Honor suggested, remand to the IJ to do factual findings. I think Granados-Benitez does not suggest that there's any difference in the standards that should apply. And I candidly don't think the government in its briefing suggested that there was a difference in the standard that should apply. Thank you. Thank you, counsel. That concludes argument in this case.